IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OSCAR A. LEIVA,<br><br>           Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security;<br><br>           Defendant. | 8:18CV461<br><br>MEMORANDUM AND ORDER |

Plaintiff Oscar A. Leiva ("Leiva") seeks judicial review of the final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Leiva's claims for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Now pending before the Court are Leiva's Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 19). For the reasons below, the Court reverses the Commissioner's denial of benefits and remands for further review.

**I.    BACKGROUND**

Leiva was born in 1975. The administrative law judge ("ALJ") assigned to Leiva's case found he is illiterate but able to communicate in English, though Spanish is his first language.[1] Leiva worked as a painter until his alleged disability onset date of October 1, 2014. He protectively applied for disability benefits on March 26, 2015, and for supplemental security income on March 23, 2015, alleging disability due to back pain and depression.

---

[1] Leiva notes he was often assisted by an interpreter when communicating with his health providers.

The Social Security Administration ("SSA") denied both claims initially on July 29, 2015, and on reconsideration on November 23, 2015. Leiva requested a hearing. At the hearing on September 7, 2017, Leiva and impartial vocational expert Kimberley North ("North") gave sworn testimony. Leiva was represented by counsel and testified without an interpreter. North participated in the hearing by telephone. Both Leiva's counsel and the ALJ questioned both witnesses.

At the hearing, Leiva testified he does not read and write well and the highest level he attained in school was the fifth grade. In 2010, Leiva injured his back in a car accident when the car he was in was struck from behind. He was not wearing a seatbelt. Leiva began to have pain a year later. He saw a doctor but continued to work. While working as a painter for Pierson Painting, Leiva again injured his back when he fell off a ladder. Leiva worked as a painter on his own for a year but has not worked for pay since 2014. Leiva testified he tried to kill himself in 2015 by driving into a tree.

Leiva reported he takes medications for back pain, anxiety, and high blood pressure. Leiva stated he saw Margarita Rodriguez Escobar, M.D. ("Dr. Rodriguez") for primary care every month for about two-and-a-half years.

When asked about his limitations, Leiva testified he cannot stay in one position and has to move every ten minutes. He explained he is only able to sleep a couple of hours per night and sometimes sleeps for a half hour twice during the day because his medication makes him tired. Leiva reported some soreness in his hands in the morning from arthritis but stated cold water helped his hands return to normal. Leiva said he could use his hands to use zippers and buttons and could lift a gallon of milk but not heavy things.

Describing his typical day, Leiva testified he gets up in the morning to tell his two children to get ready for school. After his children leave, Leiva takes the dog outside and sits on the porch. After a while he goes back in, alternating between the house and the porch "all day long." Leiva watches some television and looks for news on his phone.

Leiva does not leave the house to attend his children's soccer games because traveling in the car and potholes in the street cause him back pain. Leiva feels safer in the house.

In a Daily Activities and Symptoms Report, Leiva stated his daily activities include attending church every Sunday, handling his own money, following a treatment program, and watching football/soccer games on television for ninety minutes.

After Leiva finished testifying, the ALJ presented some hypothetical situations to North. In his first hypothetical, the ALJ asked North to assume someone of Leiva's age, education, and work experience. He also had her assume a person limited to sedentary work generally involving "lifting and carrying no more than ten pounds occasionally, less than ten pounds frequently, standing and walking up to two hours, sitting six or more hours in an eight-hour work day" with "stooping and balancing . . . on an occasional basis." Given those limitations, North testified the hypothetical person would not be able to perform the past work North identified. North testified, however, that there were other jobs that would fall within those limitations, namely, document preparer, addresser, and call-out operator. Based on her professional experience, North explained the off-task tolerance in those jobs was ten to fifteen percent.

The ALJ did not specifically ask North how a finding that Leiva is illiterate would impact the other work she identified during the hearing.

On January 18, 2018, the ALJ determined Leiva is not disabled under the Act because he is capable of performing "jobs that exist in significant numbers in the national economy." Leiva appealed, and on July 27, 2018, the Appeals Council denied review, making the ALJ's decision the Commissioner's final decision in his case. *See, e.g., Combs v. Berryhill*, 878 F.3d 642, 645 (8th Cir. 2017). Leiva seeks judicial review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. DISCUSSION

### A. Standard of Review

Section 405(g) entitles a claimant who has unsuccessfully completed the administrative-review process to judicial review of the Commissioner's final decision in federal court. *See Smith v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1765, 1772-73 (2019). In conducting that review, the Court does "not reweigh the evidence," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003), or retry the issues de novo, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). The Court must affirm the Commissioner's decision if the "denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

The threshold for substantial evidence "is not high." *Biestek v. Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019) (noting the Supreme Court has famously described it as "more than a mere scintilla" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

"In considering whether existing evidence is substantial, [the Court] consider[s] evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000). Even where a claimant has counsel, "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "If, after review, [the Court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the denial of benefits." *Wiese*, 552 F.3d at 730 (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

B.     **Eligibility for Disability Benefits and Supplemental Security Income**

Under the Act, Leiva must be disabled to qualify for disability benefits and supplemental security income. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). To prove he is disabled, Leiva must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). Leiva is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

C.     **The Five-Step Process**

"The Commissioner follows a five-step process to determine whether a claimant is disabled." *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004); *see generally* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the Commissioner considers the "claimant's work activity, if any." If a claimant is engaged in "substantial gainful activity," the Commissioner will find he is not disabled and will not go on to the next step. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Otherwise, the Commissioner moves to step two to evaluate "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The Commissioner can stop the analysis "at step two when an impairment or combination of impairments would have no more than a minimal effect on the claimant's ability to work." *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001).

At step three, the Commissioner "determines based on the medical evidence whether the severe impairments meet or equal the criteria of a 'listed impairment,' which

is presumed to be disabling." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has such an impairment that meets the duration requirement, he is considered disabled, regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

If the claimant's impairment is severe but does not meet or equal one of the listed impairments, the Commissioner moves on to step four to evaluate whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work.[2] *See Simmons*, 264 F.3d at 755; 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). If so, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If not, the burden of production shifts to the Commissioner at step five "to prove that there are other jobs in the national economy that the claimant can perform" given his age, education, and work experience.[3] *Simmons*, 264 F.3d at 755; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can adjust to other work, he is not disabled; if he can't, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### D. The ALJ's Decision

Applying this five-step process to Leiva's claim, the ALJ concluded Leiva meets the Act's insured-status requirements and "has not engaged in substantial gainful activity since October 1, 2014," his alleged onset date. The ALJ determined Leiva has the severe impairment of "degenerative disk disease of the cervical and lumbar spine." The ALJ also identified several impairments, such as hypertension, lower gastrointestinal bleed,

---

[2]A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining a claimant's RFC, the Commissioner considers "all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

[3]"The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

6

medication allergy, insomnia, and tendinitis in the left knee, that are not severe because they "establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity."

With respect to Leiva's "medically determinable impairments of major depressive disorder and generalized anxiety disorder," the ALJ stated they "do not cause more than minimal limitation in his ability to perform basic mental work activities and are therefore not severe." In reaching that conclusion, the ALJ gave "great weight to the opinions of the State agency psychological consultants who reviewed" Leiva's claim. The ALJ found their opinions consistent with the administrative record as a whole.

The ALJ noted Leiva had global assessment of functioning ("GAF") scores that indicated "moderate symptoms or moderate difficulty in social, occupational, or school functioning" but found the scores were generally "of limited evidentiary value as they are subjectively assessed and provide only snapshots of impaired and improved behavior." Because such scores "are not determinative of overall disability," the ALJ gave them little weight.

At step three, the ALJ concluded Leiva "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." The ALJ then determined Leiva's RFC based on his "careful consideration of the entire record." The ALJ found Leiva "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), which generally involves lifting/carrying 10 pounds occasionally and less than 10 pounds frequently, standing/walking up to 2 hours total, and sitting 6 or more hours in an 8-hour workday." The ALJ further found Leiva "is able to perform postural activities, like stooping and balancing, on an occasional basis."

Reviewing the record evidence, the ALJ explained Leiva's "medically determinable impairments could reasonably be expected to produce [Leiva's] alleged symptoms" but found Leiva's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." In particular, the ALJ noted that despite Leiva's allegations of severe pain and disabling limitations, his description of his daily activities and the objective medical evidence, strongly indicated Leiva "retains the capacity to perform the requisite physical and mental tasks that are part of everyday basic work activity."

Based on his analysis of the record, the ALJ concluded Leiva is unable to perform his past work as a painter because the physical demands of the job exceed his RFC. Relying on North's testimony, the ALJ nonetheless found Leiva could—given his age, education, experience, and RFC—successfully adjust "to other work that exists in significant numbers in the national economy." Accordingly, the ALJ decided Leiva was not disabled under the Act.

### E. Issues on Review

Leiva presents three issues for judicial review: (1) whether the ALJ properly developed a full and fair record with respect to Leiva's work limitations, (2) whether an unresolved conflict between Leiva's illiteracy and the language-development levels of the jobs the ALJ relied on to deny benefits prevents the denial from being supported by substantial evidence, and (3) whether the ALJ was improperly appointed in violation of the Appointments Clause of the U.S. Constitution.[4]

---

[4]Leiva's Complaint (Filing No. 1) includes a longer list of "claims for relief." In his reply brief, Leiva does not challenge the Commissioner's observation that Leiva has strategically waived "any argument regarding weighing of medical opinions, consideration of subjective complaints, and finding of residual functional capacity" by choosing not to include such arguments in his opening brief. *See, e.g., Hacker v. Barnhart*, 459 F.3d 934, 937 n.6 (8th Cir. 2006) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." (quoting *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985))).

### 1. Consultative Examinations

Leiva first argues the ALJ failed in his duty to fully and fairly develop the record as to Leiva's work limitations before denying his claim. Relying on *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), Leiva reasons, "When the ALJ does not believe the professional opinions available are sufficient to form an opinion as to the claimant's ability to work, the ALJ should further develop the record." As Leiva sees it, the ALJ should have obtained "consultative examinations to further evaluate how Mr. Leiva's mental and physical impairments impact his ability work." The argument is unpersuasive.

Although the regulations authorize an ALJ to order a consultative evaluation "if the existing medical sources do not contain sufficient evidence to make a determination," they do not require that an ALJ order such an "evaluation of every alleged impairment." *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989); *see also* 20 C.F.R. §§ 404.1517, 404.1520b, 416.917, 416.920b. An ALJ need not order a consultative evaluation if the record is sufficient to allow the ALJ "to make an informed decision" as to the alleged impairments. *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (quoting *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985)); *see also Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."). Such is the case here.

As the Commissioner notes, Leiva fails to point to anything in the administrative record that indicates the ALJ believed the available medical evidence was insufficient for him to fairly evaluate Leiva's ability to work. Leiva's argument that consultative examinations were required in this case is largely based on the faulty premise that "[t]here were no other treating or examining opinions in the record" after the ALJ "rejected" opinions from Dr. Rodriguez-Escobar, J. Brian Gill, M.D. ("Dr. Gill"), and Leiva's therapist, Magda Blanco ("Blanco").

In fact, the ALJ did not outright reject any of those opinions or otherwise ignore them in evaluating Leiva's RFC. Instead, after carefully examining the record as a whole, the ALJ gave "some weight" to two of Dr. Rodriguez-Escobar's specific statements regarding Leiva's "ability to perform work-related activities" and "little weight" to others. The ALJ likewise gave "little weight" to statements from Dr. Gill that Leiva "did not have restrictions related to his spine" and from Blanco that Leiva is "unable to work" for detailed reasons explained in the ALJ's decision. In contrast, the ALJ gave "significant weight . . . to the opinions of the State agency medical consultants," finding those opinions consistent with the record as a whole.

The ALJ did not reversibly err in developing the record on Leiva's work limitations and analyzing the conflicting medical evidence. Leiva may not agree with the ALJ's conclusions regarding Leiva's ability to work, but "[i]t is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). And the Court finds that the administrative record in this case contains ample evidence "to allow the ALJ to make an informed decision" about Leiva's work limitations. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001); *see also Stormo*, 377 F.3d at 807. The ALJ did not have to order consultative evaluations under the circumstances of this case. *See Haley*, 258 F.3d at 749-50 (concluding an ALJ did not err in not sending a claimant for a consultative examination where "[t]he record contained substantial evidence to support the ALJ's decision"); *Nicholas v. Barnhart*, 42 F. App'x 902 (8th Cir. 2002) (unpublished per curiam) ("The ALJ had no obligation to order a consultative examination because he had sufficient evidence from a treating physician and counselors to make a determination that [the claimant's] depression was not disabling.").

## 2. Alleged Unresolved Conflict at Step Five

Leiva's second argument fares better. At the administrative hearing, Leiva testified he does not read and write well and the highest level he attained in school was the fifth grade. After Leiva testified, the ALJ presented a hypothetical to North directing her to

assume a person of Leiva's age, education, and work experience with limitations consistent with Leiva's RFC. The ALJ did not tell North to assume the person was "illiterate." Based on the ALJ's hypothetical, North determined the hypothetical person with the stated background and restrictions would be able to work as a document preparer, addresser, or call-out operator.[5]

In his written decision denying benefits, the ALJ found—without any explanation—that Leiva "is illiterate, but able to communicate in English." In support of that finding, the ALJ cited 20 C.F.R. §§ 404.1564 and 416.964, both of which state the following about illiteracy as a vocational factor:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

*Id.* §§ 404.1564(b)(1) and 416.964(b)(1). The ALJ did not specifically say how his finding that Leiva is illiterate factored into his decision at step five that Leiva would be able to adjust to the work required by the DOT job listings North identified.

Leiva contends "[t]he ALJ's step five denial of benefits is not supported by substantial evidence as the ALJ failed to clarify the apparent unresolved conflict between Mr. Leiva's illiteracy and the language development levels of the jobs the ALJ relied on to deny benefits." According to Leiva, the ALJ's illiteracy finding in this case "precludes even [DOT] Language Development Level 1 reading and writing tasks . . . and raises an

---

[5]Though not discussed at the administrative hearing, the parties note in their briefs that the jobs of document preparer and addresser as described in the Dictionary of Occupational Titles ("DOT")—like Leiva's past work as a painter—require Level 2 Language Development, which includes the ability to read "adventure stories and comic books" at "190-215 words per minute" and write "compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs." The job of call-out operator requires Level 3 Language Development, which includes the ability to read "novels, magazines, atlases, and encyclopedias" and write "reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech."

11

apparent conflict per Social Security Ruling 00-4p with any job a vocational expert identifies a claimant can perform." Leiva urges the Court to remand the case so a vocational expert can provide additional testimony to enable the ALJ to resolve the apparent conflict and repeat step five.

The Commissioner responds that remand is unnecessary. Noting that North heard Leiva testify about his education level and limited ability to read and write, the Commissioner asserts the ALJ did not need to specify that Leiva was illiterate because North already had the pivotal information and would have understood she should incorporate Leiva's limitations into the ALJ's hypothetical. The Commissioner further argues "there is no apparent conflict between [North's] testimony and the DOT" because Leiva successfully worked as a painter for many years which required "the same level of language development as required for document preparer and addresser." The Commissioner asks the Court to affirm her step-five finding.

Leiva has the stronger position on this issue. Although a finding of illiteracy does not necessarily establish that a claimant is per se disabled, "[t]he ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

In light of the ALJ's illiteracy finding in this case, North's testimony that someone with Leiva's limitations could work as a document preparer, addresser, and call-out operator could possibly conflict with the DOT language-development levels for those jobs. *See, e.g., Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558-59 (8th Cir. 2018). "[B]efore an ALJ can rely on a vocational expert's testimony that appears to conflict with a [DOT] listing, the ALJ must identify and resolve the conflict. Otherwise, the vocational

expert's testimony is not substantial evidence to support a denial of benefits." *Id.* at 558; *accord Social Security Ruling 00-4p* (emphasizing that before an ALJ can rely on evidence from a vocational expert, the ALJ must (1) "[i]dentify and obtain a reasonable explanation for any conflicts between" that occupational evidence and the information in the DOT and (2) explain in the ALJ's decision how any identified conflict was resolved).

Here, neither North nor the ALJ even mentioned any possible conflict presented by Leiva's limited ability to read and write and the language-development levels of the DOT job listings North identified, much less reasonably explained or resolved any possible conflict. *See, e.g., Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (concluding "the Commissioner did not meet her burden at step five of the sequential evaluation process" where "the record d[id] not reflect whether the [vocational expert] or the ALJ even recognized the possible conflict between the" ALJ's hypothetical and the DOT job listing); *Stanton*, 899 F.3d at 559-60 (reversing and remanding for further proceedings because the ALJ and vocational expert did not adequately address and explain a potential conflict).

Indeed, it appears the ALJ did not expressly find Leiva to be illiterate until he published his written decision on January 18, 2018—several months after the hearing. Given that timing and the record in this case, the Court is unwilling to assume North anticipated the ALJ's illiteracy finding at the hearing and somehow incorporated that important limitation—and all its potential consequences—into her response to the ALJ's hypothetical. *See, e.g., Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) ("Unless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a vocational expert will be unable to accurately assess whether jobs do exist for the claimant." (quoting *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994))).

The Court also declines the Commissioner's invitation to affirm the ALJ's decision based on an incomplete and abstract transitive analysis of Leiva's past work as a painter

and his purported ability to adjust to the work required by two of the three positions North identified. The Commissioner may be right that Leiva could perform at least some of the jobs North identified despite his impairments, *see Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997) (explaining that the DOT is not the definitive authority on job requirements and that "not all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT"), but that conclusion is far from clear on this record, and the ALJ has not articulated any basis for reaching such a conclusion here. The Commissioner can properly address that issue in the first instance on remand.

### 3. The Appointments Clause

Leiva last argues the ALJ's decision must be vacated and remanded for a new hearing before a different ALJ because the ALJ who decided his case was an inferior officer and was not properly appointed under the Appointments Clause of the Constitution. *See* U.S. Const. art. 2, § 2, cl. 2. Leiva did not raise that issue before the ALJ or the Appeals Council and has not provided any compelling reason for failing to do so. Accordingly, Leiva has forfeited any challenge to the Commissioner's decision based on the Appointments Clause. *See Millard v. Berryhill*, No. 8:18CV452, 2019 WL 2502876, at *8 (D. Neb. June 17, 2019) (considering and rejecting nearly identical Appointments Clause arguments and denying the claimant's request for relief as untimely).

## III. CONCLUSION

Leiva has forfeited any Appointments Clause challenge to the ALJ assigned to his case. Leiva's ALJ did not fail to fully and fairly develop the record as to Leiva's work limitations but did fail at step five of the sequential evaluation process to adequately address a possible conflict between the vocational expert's testimony and the requirements of the DOT job listings the ALJ relied on to deny benefits. As such,

IT IS ORDERED:

1. Oscar A. Leiva's Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) and the Commissioner's Motion to Affirm the Commissioner's Decision (Filing No. 19) are each granted in part and denied in part as set forth in this Memorandum and Order.

2. The Commissioner's final decision denying Leiva's claim for benefits is reversed, and this case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

3. A separate judgment will issue.

Dated this 24th day of July 2019.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge